## Ambrose Mulley, Appellant, *v.* George H. Shoemaker.

*Husband and wife—Married women—Fraud—Claim of title against husband's creditors—Ejectment.*

In an action of ejectment by a purchaser at sheriff's sale, the wife of the defendant in the execution claimed that she had bought the property in controversy with money which she had borrowed from a relative. There was evidence that the husband had previously sold some real estate, and that some of the money which he had received for it had been paid to the relative from whom the wife claimed that she had borrowed the money used by her in the purchase of the land in controversy. The court instructed the jury that the burden was upon her to show that the purchase was made with her own money, and that if she made the purchase with her own money exclusively she acquired thereby a title good against her husband and his creditors ; that if her hands were clean, she was not responsible for her husband's misdeeds, even though he may have sold his property for the purpose of hindering and delaying his creditors, but that if she connived or colluded with him in the purchase of the property by using any of the money which he received from his other land, the plaintiff was entitled to a verdict. *Held*, that a judgment and verdict for the wife should be sustained.

Argued Feb. 22, 1897. Appeal, No. 309, Jan. T., 1896, by plaintiff, from judgment of C. P. Lackawanna Co., May T., 1894, No. 798, on verdict for defendant. Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Ejectment for a lot of land in the city of Scranton. Before GUNSTER, J.

The facts appear in the opinion of the Supreme Court, and by the following parts of the charge of the court below.

This is an action of ejectment brought by Ambrose Mulley, the plaintiff, against George H. Shoemaker and Ellen F. Shoemaker, his wife, defendants, to recover possession of a lot of land in the city of Scranton, known as lot Number 11 in block " B " of Clark & Beale's addition to the city. He alleges that the title and right of possession is in him and not in the defendants.

It appears from the undisputed evidence in the case that on September 28, 1893, he recovered a judgment in the court of common pleas of this county against the defendant, George H.

Shoemaker, for the sum of $115.19, with costs. Upon that judgment an execution was issued, and this property now in dispute was levied upon by the sheriff, an inquisition was duly held, and the property was condemned. After the condemnation of the property a writ of venditioni exponas was placed in the hands of the sheriff, and this property was sold by the sheriff to Ambrose Mulley, the plaintiff, for the sum of $46.20, on January 6, 1894, and the deed was properly acknowledged on January 18, 1894.

Now I say to you as a matter of law that by virtue of that sale on that judgment to Mr. Mulley, whatever interest George H. Shoemaker had in this property became vested in Ambrose Mulley, the plaintiff. If George H. Shoemaker owned the property, or had any interest in it, by virtue of the sale, Mr. Mulley became the owner of it. Of course if he had no interest, then Mr. Mulley purchased nothing.

Now it is alleged upon the part of the plaintiff that this property was the property of George H. Shoemaker. Upon the part of the defendants it is claimed the property belonged to Ellen F. Shoemaker, George H. Shoemaker's wife. It appears that when Mr. Mulley instituted proceedings to obtain possession of this property under the act of assembly, before an alderman in this city, Ellen F. Shoemaker, wife, the other defendant, made an affidavit claiming title and possession to be hers and not in her husband, George H. Shoemaker, and gave bond for appearance to defend this action of ejectment. In that proceeding she claimed the title was in her. When a married woman seeks to defend property which she claims to be hers as against creditors of her husband, whoever levies upon it and sells it by virtue of a judgment against her husband, the burden of proving title in herself is upon the wife. The relation of husband and wife is very close; and whenever property is sold as the property of the husband at the instigation of a creditor, and the wife claims the title to the property, the burden of proving that the title is in her is upon her. A sheriff's sale of the property as the property of the husband is, prima facie, a sale of the property of the husband. Of course it was a sale of the property of the husband if he had title to it, and as against creditors of the husband, prima facie, the title to the property is in him and not in the wife. . . .

It is alleged on the part of the defendants that Mrs. Shoemaker borrowed money with which to purchase the lots upon which she subsequently erected the house. Upon the .part of the defense it is claimed that Mrs. Shoemaker derived her title through Mr. Beale and Mr. Clark, and the title had been traced away back to the commonwealth. There is no dispute so far as the paper title of the defendant is concerned. . . .

Now as between her and Mr. Mulley who purchased it at sheriff's sale as a creditor of her husband, the burden of showing that the money with which she paid for this lot was derived from some source other than from or through her husband is upon her. The burden of proving that she paid the consideration for this lot, that she obtained this money in her own right, and not from or through her husband, is upon her, and she must prove it by the fair weight of the evidence. She must prove it by evidence that is full and clear and satisfactory. She alleged she did borrow this money. She alleges that about the time she bought this lot from Beale and Clark that she borrowed $725 of her sister, Mrs. Adams, and that her sister and she had some arrangement by which she was to pay the money back to her sister within five years or furnish her a home, and that $500 of this $775 was paid for this lot, paying this purchase money in full. She also testifies that she obtained none of it from or through her husband. The contract for the building has also been offered in evidence. That is in her name, and the burden of proving that she paid for that with her own money, or with money she raised on her own credit is upon her. She seeks to meet that burden by offering in evidence the mortgage to the Trust and Safe Deposit Company of Scranton, for the sum of $1,250, purporting upon its face to have been given by her upon her property, she having the deed from Beale and Clark, and given for her own debt. This mortgage has been offered in evidence. The defendants have also put upon the stand Mr. Shoemaker, who testified that at the time this property was purchased he was insolvent; that he had nothing himself, and that he does not know where his wife got the money except what was told him.

In rebuttal of this testimony it is contended upon the part of the plaintiff that instead of being insolvent, instead of not having any money at the time his wife purchased this property,

that he had money; that he sold his property some couple of
months previous to another party for the sum of $1,600; that
while part of it went to the payment of a mortgage, the balance
of it he had in his possession. You have also the testimony of
George Trauger who testified that in conversation with George.
H. Shoemaker the latter told him he had sold his property so
that they could not collect anything from him. He had a fracas
with someone there in Green Ridge, where he lived, and that
he sold his. property so they could not collect anything from
him. This bond is dated October 22, 1892. The deed by which
he sold the property is dated October 17, 1892, showing that
he took the benefit of the insolvency act some five days after he
sold his property.

Now whatever the conduct of the husband may have been, if
the wife's hands were clean, if she borrrowed the money upon
her own credit, derived none of the money with which she paid
for this property from her husband or through him, then no
matter what· misconduct her husband may have been guilty of,
she could not be held responsible for it. [But if you should
find that she connived with him or colluded with him in the
purchase of this property by using any of the money which he
received from the property which was sold in Green Ridge, for
the purchase of this property, for the purpose of cheating, de-
laying or hindering creditors, or avoiding the costs of prosecu-
tion in which he was engaged, then the plaintiff is entitled to
your verdict. If on the other hand you find the wife's hands
are clean, even though the husband may have sold his property
for the purpose of hindering and delaying his creditors, then
your verdict should be in her favor, because she is not respon-
sible for his misdeeds unless she joins in them.] [1]

Now in connection with what I may say that he himself might
sell this property in Green Ridge for the purpose of defrauding
his creditors, and he might as a matter of fact have actually done
that. I don't say that he did, it is a question of fact under the
evidence to find whether or not he did; you must go further
than that; you must find that his money went into the purchase
of this property. That is what you must find. The burden of
showing that it was her money is upon her. She must show she
obtained it from some other sources than from him or through
him. If she fails to overcome that burden, then prima facie

his money paid for it. But if you fail to find from the testi-
mony in the case that his money went into it, then even if he
did sell his property at Green Ridge for the purpose of cheating
creditors, the wife might still be entitled to recover.

Verdict and judgment for defendant. Plaintiff appealed.

*Error assigned* among others was above instruction, quoting it.

*A. A. Vosburg*, with him *W. S. Hulslander*, for appellant.—
In a contest between a wife and the creditors of her husband,
the question of fact is " whether or not she purchased the prop-
erty with her own money : " Delaney v. Mulligan, 148 Pa. 157 ;
Leinbach v. Templin, 105 Pa. 522 ; Lochman v. Brobst, 102
Pa. 481 ; Spering v. Laughlin, 113 Pa. 209 ; Campe v. Horne,
158 Pa. 508.

If George Shoemaker furnished the money to purchase the
Clark & Beale property it was a gift to his wife, and if there
was an intent to defraud creditors on his part the gift is void
as to all existing creditors. This would be true even had he
given it to a stranger: 8 Am. & Eng. Ency of Law, 1341 ;
Clark v. Depew, 25 Pa. 509 ; Thornton on Gifts and Adv., 468 ;
Taylor v. Johnson, 113 Ind. 164 ; Bisbing v. Bank, 93 Pa. 79.

Where a husband who is insolvent makes a voluntary convey-
ance to his wife, or pays. the purchase price of property which
is conveyed to the wife, the conveyance is presumptively
fraudulent ; and it is not necessary in such case to charge fraud
as against the wife : Triplett v. Graham, 58 Iowa, 135.

If the language of the court tends to mislead the jury, it is
ground for reversal : Fawcett v. Fawcett, 95 Pa. 376 ; Bisbing
v. Bank, 93 Pa. 79 ; Penna. R. Co. v. Berry, 68 Pa. 272.

*John F. Murphy*, with him *George W. Beale*, for appellee,
cited as to the sufficiency of the charge : Carothers v. Dunning,
3 S. & R. 373 ; Little Schuylkill Navigation Co. v. French, 2
W. N. C. 718 ; Reeves v. Del., Lack. & West. R. R., 30 Pa. 454 ;
Kyle v. Electric Light & Power Co., 174 Pa. 570 ; as to the
question of fraud : Tripner v. Abrahams, 47 Pa. 227 ; Larkin
v. McMullin, 49 Pa. 35 ; Unangst v. Goodyear Co., 141 Pa.
133 ; Reese v. Reese, Hart, Lee & Co.'s App., 157 Pa. 207 ;
Steffen v. Smith, 159 Pa. 207 ; Koechling v. Henkel, 144 Pa.

218; Campe v. Horne, 158 Pa. 512; Orr v. Bornstein, 124 Pa.
315; McCormick v. Bottorf, 155 Pa. 331; Latrobe Building
Assn. v. Fritz, 152 Pa. 224; Abell v. Chaffee, 154 Pa. 254;
Walter v. Jones, 148 Pa. 590.

OPINION BY MR. JUSTICE WILLIAMS, April 12, 1897:

The important question presented by this appeal is that
which is raised by the first assignment of error. The action is
ejectment by a purchaser at sheriff's sale upon a judgment
against George H. Shoemaker. The defense alleges that the
title to the lot in controversy was in Mrs. Shoemaker, the wife
of the defendant, and that it was never in the defendant. In
support of this line of defense, evidence was given tending to
show that Mrs. Shoemaker negotiated the purchase, and bor-
rowed the money which she paid upon it from a relative. The
good faith of this purchase was attacked by the plaintiff, who
showed that Shoemaker had sold his own house and lot just
before the judgment was recovered against him for $1,600,
which was paid to him in cash, and that some of this money had
been paid to the relative from whom Mrs. Shoemaker claimed
to have borrowed the money used by her in the purchase of the
lot now in question. The question in the case was whether
Mrs. Shoemaker had shown a title obtained in good faith by the
investment of her separate moneys, or whether she held for her
husband, having used directly or indirectly his money in effect-
ing the purchase. Upon this question the learned judge in-
structed the jury that if she made the purchase with her own
money exclusively she acquired thereby a title good against her
husband and his creditors, but that if she connived or colluded
with him in the purchase of the property by using any of the
money which he received for his house in Green Ridge, in pay-
ment of the purchase money, then the plaintiff was entitled to a
verdict. "If on the other hand you find the wife's hands are
clean, even though the husband may have sold his property for
the purpose of hindering and delaying his creditors, then your
verdict should be in her favor, because she is not responsible
for his misdeeds unless she joins in them." But he said much
more upon this subject, and, omitting all reference to collusion
between the husband and wife, told the jury plainly that if the
husband's money went into the purchase of this lot the plaintiff

ought to recover, and that the burden of showing that it did not was upon her.   He said: " She must show she obtained the money from some other source than from him or through him. If she fails to overcome that burden, then prima facie his money paid for it.   But if you fail to find from the evidence in the case that his money went into it, then even if he sold his property at Green Ridge for the purpose of cheating his creditors, the wife might still be entitled to recover." When we consider all the learned judge said to the jury upon this subject, we do not feel that they were misled, or left without adequate instructions.   The good faith of the purchase by the wife with her own property or credit was properly made the turning point in the cause.   This was correct.   The jury may have erred, but it does not seem that any responsibility for such error, if error there was, rests upon the learned judge.

The assignments of error are not sustained and the judgment is affirmed.